# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**JESSICA MORRELL**                                                                                    **PLAINTIFF**

**VS.**                                           **No. 4:21-cv-00724 PSH**

**KILOLO KIJAKAZI, Acting Commissioner,**
   **Social Security Administration**                                                    **DEFENDANT**

## ORDER

Plaintiff Jessica Morrell ("Morrell"), appeals the final decision of the Commissioner of the Social Security Administration (defendant "Kijakazi") to deny her claim for Disability Insurance benefits ("DIB") and Supplemental Security Income ("SSI"). Morrell maintains the Administrative Law Judge ("ALJ") erred in evaluating and analyzing the opinion of treating neurologist Dr. David Oberlander ("Oberlander"). As a result of this failure, Morrell contends the residual functional capacity ("RFC") adopted by the ALJ was not supported by substantial evidence.[1] The parties have ably summarized the testimony given at the administrative hearing conducted on

---

[1] Morrell's brief also contains a second claim for relief – the RFC was erroneous due to the improper treatment of the opinions of Dr. Hester. However, this argument was apparently inadvertently submitted, as the record does not show Morrell was examined by Dr. Hester.

1

September 24, 2020. (Tr. 34-50). The Court has carefully reviewed the record, including the medical records, to determine whether there is substantial evidence in the administrative record to support Kijakazi's decision. 42 U.S.C. § 405(g). The relevant period under consideration is from June 1, 2018, the alleged onset date, through December 11, 2020, the date of the ALJ's decision. Morrell was 38 years old at the time of the ALJ's decision, with past relevant work as a cook at Burger King and as a Certified Nurse Assistant ("CNA").

*The Administrative Hearing:*

In response to questions posed by the ALJ, Morrell stated she last attempted to work from April to July 2020 but "my doctor had me to stop working due to my epilepsy." (Tr. 37). The most recent work was as a CNA, which vocational expert Jim Spragins ("Spragins") described as semiskilled work which was performed at the heavy exertional level. (Tr. 39).

Morrell's attorney questioned her further. In response, Morrell said she lived with her husband and three children, aged 15, 13, and 8. Morrell was primarily responsible for child rearing duties. She stated her oldest son was educated on how to respond if she had a seizure.

Morrell described epileptic seizures occurring "multiple times in a week or in a day" in July 2020 when she tried to work. She estimated having ten seizures during

June 2020, some of which occurred at work. When the seizures occurred she said she would lie down, rest, would be exhausted, and go home when someone picked her up and drove her. According to Morrell, her supervisors stated she should not work if having the seizures. The seizures were "random . . . they do not give me any warning." (Tr. 41). Morrell said her doctor concurred with work supervisors, indicating she should not work if the seizures are not controlled.

      Morrell testified that after stopping work in July 2020, the seizures continued at the same frequency, a frequency which began in 2017 or 2018. Morrell stated the seizures resulted in exhaustion, requiring her to rest for a full day to recover. In addition, she experienced migraine headaches both before and after the seizures, as well as post-seizure nausea and bladder incontinence during about half of the episodes. On one occasion, Morrell said she bit her tongue during a seizure. Morrell identified family members who had observed the seizures (mom, dad, husband, and kids). Although Morrell indicated she has no memory of what occurs during the seizures the family members have told her "I flop around or I stiffen up. It scares them. I stop breathing." (Tr. 43). Morrell stated she calls her doctor each time she has a seizure and goes to the emergency room sometimes. Since the summer of 2018, her doctor has been treating the seizures with Topomax, adjusting the dosage and instructing Morrell to keep him informed on progress. Her doctor has told her not to

3

drive, and the seizures interfere with her ability to do household chores.

Morrell described the typical seizure as lasting 3-5 minutes, and indicated she sometimes has migraines unassociated with a seizure. She has the independent migraines "frequently" and they typically last 3-4 days, though they have lasted as long as a week. Morrell stated the migraines immobilize her and require her to be in a dark room.

Morrell described mental health challenges – "really bad depression and anxiety and bipolar disorder that runs altogether I guess." (Tr. 46). She stated she had been told she has multiple personalities, and has manic and depressive spells. She also indicated her anxiety can be triggered easily. For example, someone yelling at her or being questioned at the administrative hearing could trigger the anxiety. Another trigger, according to Morrell, would be encountering a combative resident in the work setting.

Spragins, the vocational expert, testified. The ALJ posed a hypothetical question, asking him to consider a hypothetical worker of Morrell's age, education, and experience, who could perform light work with the following restrictions: she must avoid even moderate exposure to hazards such as dangerous machinery and unprotected heights; interpersonal contact would be incidental; tasks should be no more complex than those learned and performed by rote with few variables and little

judgment; and supervision would be simple direct, and concrete; could not climb ropes, ladders, or scaffolds; could occasionally climb ramps and stairs; and could occasionally stoop, crouch, crawl, and kneel. Spragins testified that such a hypothetical worker could perform light exertional jobs, such as cashier II, small product assembler, or merchandise marker. Spraings stated no jobs would be available to Morrell if she were absent at least two days a month, or if she left work early ten days a month. (Tr. 34-50).

*ALJ's Decision:*

In his December 11, 2020, decision, the ALJ determined Morrell had the following severe impairments: mild degenerative disc disease and facet arthropathy, lumbar spine; obesity;[2] fibromyalgia; seizure disorder; complex migraine disorder; depressive disorder; and anxiety disorder. The ALJ found that Morrell's glaucoma was non-severe. The ALJ considered the "paragraph B" criteria regarding mental impairments, finding Morrell had moderate limitation in understanding, remembering, or applying information, mild limitation in interacting with others, moderate limitation in concentrating, persisting, or maintaining pace, and moderate limitation in adapting or managing oneself.

---

[2] In September 2018, shortly after the relevant period began, Morrell was 5' 1" and weighed 194. (Tr. 607).

The ALJ found Morrell did not have an impairment or combination of impairments that met a listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ expressly addressed her obesity in the context of a Listing, and considered if Morrell met Listing 1.04, 1.00B2b, 14.09D, 11.02, 12.04, and 12.06. The ALJ also determined the evidence failed to establish the presence of the "paragraph C" criteria.

The ALJ judged Morrell to have the RFC to perform light work with the restrictions which mirrored those detailed in the hypothetical question posed to Spragins. The ALJ assessed Morrell's subjective allegations, citing the appropriate factors and finding her statements "not entirely consistent with the medical evidence and other evidence in the record." (Tr. 19).

The ALJ discussed the medical evidence, noting Morrell's history of back pain prior to her alleged onset date. The ALJ discussed a February 2018 lumbar spine MRI and June 2018 examination where she exhibited painful range of motion and lumbar tenderness but also exhibited intact lower extremity strength and nonantalgic gait. Also noted in the decision were January 2019, March 2019, and August 2020 imaging results. These imaging results were normal in most respects, showing mild degenerative changes in the lower lumbar spine.

The ALJ considered impairments other than back problems, noting Morrell was diagnosed with fibromyalgia in January 2019.

The ALJ examined in detail Morrell's issues with migraines and seizures, noting her emergency room visits in June and August 2018 and her treatment received from neurologist Oberlander beginning in August 2018. Oberlander diagnosed Morrell with complex or atypical migraine or migraine equivalent. Oberlander's treatment, as described the by the ALJ, included Topomax in increasing dosage, and electroencephalograms, one of which showed in October 2019 an increased risk for focal seizures. The ALJ concluded his assessment on this issue: "However, the undersigned notes that after initiation of medication and treatment with Dr. Oberlander in late 2018, the claimant received no further emergency treatment for seizures, and she was following up with Dr. Oberlander once every six months in 2020." (Tr. 21).

The ALJ also addressed Morrell's anxiety and depression, citing two psychological consultative examinations. Dr. John Faucett, Ph.D., ("Faucett"), examined Morrell in April 2018, just prior to her alleged onset date. Dr. Don Ott, Ph.D., ("Ott"), examined Morrell in June 2019. The ALJ noted Faucett's diagosis of persistent depressive disorder, as well as adjustment disorder with mixed anxiety and depression, and Ott's diagnosis of depressive disorder. The ALJ also cited other details from their examinations, and summarized mental health treatment Morrell received from other providers.

The ALJ summarized the medical opinions in the record. The state agency medical consultants were, according to the ALJ, persuasive in finding Morrell capable of light work with no moderate exposure to hazards. The ALJ also found persuasive the opinions of the state agency psychological consultants who found Morrell capable of performing work with limited interpersonal contact, and tasks and supervision that were not complex.

Oberlander's opinions were assessed as follows:

> The undersigned is unpersuaded by the opinions of David Oberlander, M.D. who found the claimant can infrequently sit, stand, and walk, cannot stoop or climb, can infrequently lift and carry twenty pounds, can occasionally perform fine and gross manipulation and reach overhead, will be off-task 80% of the workday, requires unscheduled breaks, and will miss five days of work per week. Dr. Oberlander further found the claimant is unable to drive or work due to seizures, and he found the claimant's migraines will cause her to miss one day of work per week. While Dr. Oberlander's opinions regarding the claimant's inability to drive are supported by his statements and are consistent with the record, given the claimant's history of seizures, his statements regarding the claimant's overall inability to work are inherently neither valuable nor persuasive, as they state opinions on a matter reserved to the Commissioner. The undersigned also notes there is no evidence cited by Dr. Oberlander to support the exertional or manipulative limitaitons opined. Additionally, while the evidence cited might support some degree of off-task behavior or work absences, the undersigned notes the opinions are from 2018 and early 2019, and they are inconsistent with more recent medical evidence, including Dr. Oberlander's own notes. As previously noted, the claimant has been on a steady regimen of medication since October 2019, and now follows up with Dr. Oberlander once per month, while her EEG from October 2019 only indicated increased risk for dyscognitive seizures. Accordingly, the undersigned finds Dr. Oberlander's opinions unpersuasive.

(Tr. 23).

The ALJ continued with his analysis of medical opinions, finding persuasive the opinion of Faucett and finding Ott's opinion unpersuasive. These two psychological examiners differed on Morrell's cognitive capacity to perform basic work-like tasks.

The ALJ determined Morrell could not perform her past relevant work. However, relying upon Spragins' testimony, the ALJ held Morrell could perform other light work in the national economy. Accordingly, the ALJ concluded she was not disabled. (Tr. 13-26).

*Morrell's Claim – ALJ error in evaluating and analyzing the Oberlander's opinion*

Morrell contends the ALJ failed to comply with the relevant regulations for evaluating medical opinion evidence when considering the opinions of treating neurologist Oberlander, who offered his opinions in June 2019. (Tr. 1169-1170).

The regulations governing the consideration of the medical opinions were revised for claims filed on or after March 27, 2017. Morrell filed her claim on September 24, 2018. The new regulations eliminated the "long-standing 'treating physician' rule." *See Fatuma A. v. Saul*, 2021 WL 616522, 5 (D. Minn. 2021), report and recommendation adopted, 2021 WL 615414 (D. Minn. 2021). The regulations

now provide the following:

> ... Under the new regulatory scheme, the Commissioner "will not defer or give any specific weight, including controlling weight, to any medical opinion(s)," including those from treating physicians. 20 C.F.R. 404.1520c(a). Instead, ALJs will determine the persuasiveness of each medical source or prior administrative medical findings based on supportability; consistency; relationship with the claimant; specialization; and any other factor that tends to support or contradict a medical opinion. 20 C.F.R. 404.1520c(a), (c). ALJs are required to "explain" their decisions as to the two most important factors—supportability and consistency. 20 C.F.R. 404.1520c(b)(2). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" a medical opinion is with evidence from other medical and non-medical sources, the more persuasive the opinion should be. 20 C.F.R. 404.1520c(c)(1)-(2).
>
> The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017). ...

See *Phillips v. Saul*, 2020 WL 3451519, 2 (E.D. Ark. 2020) (Deere, MJ).

The new regulations require the ALJ to discuss, at a minimum, the supportability and consistency of a medical opinion. Morrell takes issue with the ALJ's treatment of Oberlander's opinion in two ways: (1) while the ALJ discussed the supportability of Oberlander's opinion, Morrell argues the ALJ did so by mischaracterizing the evidence; and (2) the ALJ "played doctor" by basing his opinion on the raw evidence to second-guess Oberlander.

First, a review of Oberlander's treatment history is helpful. Oberlander saw

Morrell about a dozen times between August 2018 and August 2020. He treated her atypical spells with various medications, including Keppra, Dilantin, Zonergan, and Topomax. Oberlander noted on all visits that Morrell should not drive. (Tr. 676, 680, 682, 1146, 1149, 1154, 1409, 1412, 1415, 1418, and 1422). On only two occasions did Oberlander address work issues. In October 2018, Oberlander recorded, "Filled out a form for her to be off work for the next few months." (Tr. 680). Two years later, in October 2020, Oberlander wrote "off work for now." (Tr. 1409). Oberlander consistently found Morrell to be alert, oriented, with an intact memory, concentration, and neurological function, full muscle strength (5/5), intact fine motor skills, and a normal gait. (Tr. 675, 679, 682, 1145, 1148, 1153, 1158, 1414, 1417, and 1421).

In December 2018, Oberlander executed a Treating Physician's Migraine Headache Form and a Treating Physician's Report for Seizure Disorder. (Tr. 1147-1150). Oberlander estimated Morrell's migraines would cause her to miss about a day a week from work. He noted her response to medications (she was currently taking Dilantin) was fair, and that emergency room visits were required in the previous year. Regarding seizures, Oberlander indicated Morrell had one seizure per week, with loss of consciousness, alteration of awareness, and postictal antisocial behavior. Oberlander had not observed Morrell's seizures. Morrell was being treated for seizures with Dilantin, and her medications were last adjusted one month earlier.

In June 2019, Oberlander executed a Medical Source Statement, estimating Morrell would miss five or more days per month due to her medical conditions. He indicated she could never climb or stoop, and could infrequently sit, stand, and walk. According to Oberlander, Morrell could infrequently lift one or more pounds, and could occasionally use hands for fine or gross manipulation and raise either arm over her shoulder. The Medical Source Statement is primarily a checklist, with the handwritten portion only partially legible. Oberlander rated Morrell would be off task 60% of a workday due to pain, and she would need unscheduled break periods. Oberlander expected Morrell's limitations to last for twelve consecutive months or longer. (Tr. 1169-1170).

Returning to Morrell's arguments, she concedes the ALJ addressed the supportability and the consistency of Oberlander's opinion. Morrell contends, however, the ALJ erred in stating that Oberlander's more recent treatment notes were inconsistent with his opinions expressed in 2018 and 2019. This error, according to Morrell, invalidates the ALJ's treatment of Oberlander's opinions. The Court disagrees.

While one of the factors cited by the ALJ was the more recent treatment notes of Oberlander, the ALJ's overall assessment of Oberlander satisfied the requirements of the relevant regulations. The ALJ could have been more specific when citing

Oberlander's more recent notes. However, Oberlander's notes, both recent and older, did not match the exertional and manipulative limitations he included in his medical source statement from June 2019. Further, Morrell cites the August 3, 2020, treatment note as demonstrating that Oberlander examined her and found continued complex partial seizures and increased migraine headaches. The note itself shows Oberlander recorded Morrell as subjectively providing this information. A subjective statement is not equivalent to an objective medical observation. Oberlander's plan at this visit was to increase Topomax and continue Zonergan while awaiting Morrell's receipt of a medical marijuana card. He also recorded "off work for now" and was to see Morrell again in six months. (Tr. 1409).

In summary, the ALJ adequately discussed the consistency and supportability of Oberlander's checklist opinion, and Morrell's claim that the assessment was erroneous due to mischaracterization of the record is without merit. The paragraph from the ALJ's decision, quoted above, addresses both the supportability and consistency of Oberlander's opinions, and amply explains why he deemed the opinions unpersuasive.

Morrell also faults the ALJ's decision for "playing doctor" rather than discharging his duty as an ALJ. Specifically, Morrell contends the ALJ erred by noting her "steady regimen of medication since October 2019" with ensuing monthly

follow-ups with Oberlander, and that her EEG from October 2019 only indicated increased risk for dyscognitive seizures. (Tr. 23). The Court finds no error in this regard. The ALJ is responsible "to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his [or her] limitations." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). Here, the ALJ assessed Oberlander's opinion, as well as the opinions of the state agency physical and psychological consultants, and the opinions of Faucett and Ott. The ALJ was not obliged to fully embrace any single opinion, and his acknowledgment that Morrell had a lesser degree of off-task behavior than that opined by Oberlander was not error. Indeed, this assessment falls squarely within the ALJ's duties. In this instance, the ALJ's determination was supported by substantial evidence[3] and the argument of Morrell is without merit.

In summary, the ultimate decision of Kijakazi was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this

---

The ALJ must support his decision with substantial evidence, and reversal is not required even if substantial evidence would have supported a different outcome. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

case.

IT IS THEREFORE ORDERED that the final decision of Kijakazi is affirmed and Morrell's complaint is dismissed with prejudice.

IT IS SO ORDERED this 20th day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE